**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-10103-WEB |
| | ) | |
| Manuel Roach, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

MEMORANDUM AND ORDER

This matter came before the court on defendant's Motion for a Protective Order (Doc. 22) compelling the Government to preserve DNA evidence.   The Government presented one witness, Shelly Steadman, an analyst with the Sedgwick County Regional Forensic Science Center.  Arguments of counsel followed, and the Motion was orally denied.  This Order supplements the ruling.

I. Evidence

The Government presented testimony of Shelly Steadman.  Ms. Steadman testified she is employed with the Sedgwick County Regional Forensic Science Center.  She works in the area of Forensic Biology and also serves as the DNA Lab Manager.  Her job is to analyze DNA and make comparisons.  She testified the lab had received four swabs related to this case, taken for DNA analysis, but the swabs had not been tested yet.  Two swabs were obtained from the grips of a firearm, and two swabs were from the slide of a firearm.  She believed the swabs were all taken from the same firearm.

Ms. Steadman testified regarding the procedure used in the lab when testing DNA from a

1

firearm.  In her training and experience, as well as the procedure of the lab, DNA analysis is more successful if the swabs come from the grips on the firearm.  Due to the rough surface, there is a higher possibility of obtaining DNA from the grips.  Ms. Steadman further testified the procedure in the lab was to use multiple swabs, if available, when testing for DNA.  By using multiple swabs, there is more of a sample for analysis.  She testified that sufficient DNA may be obtained from only one swab, but this is not the preferred method of testing.  Product loss occurs at every step, and if only one swab is tested, and the DNA sample is insufficient, in the process of analyzing another swab, product will be lost.  By analyzing both swabs together, in a single tube, there will be more sample and less product loss.  Ms. Steadman also testified that separate extraction is the same process, but it doubles the amount of handling, and leads to higher probability of introducing foreign substance to the sample.  The probability of obtaining a complete DNA analysis is greater when both swabs are used.  It is not possible to tell if there will be enough DNA on a single swab before testing.

Ms. Steadman also testified that if both samples are analyzed, and the entire sample is consumed in the process of testing, then testing cannot be repeated by a separate laboratory.  In some instances, there could be DNA leftover, this would depend on the sample, and would not be known until testing was complete.  However, data and results from the testing can be shared or reviewed by another expert.

II. <u>Discussion</u>

Inquiry into evidence material to the defense and the obligation of the prosecution starts with due process rights and *Brady*.  The Fifth Amendment requires fundamental fairness in criminal prosecutions.  A defendant has a right to evidence that is favorable to the accused,

2

where the evidence is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963).

The courts have examined the obligation of the Government to preserve evidence that is potentially exculpatory. In *Killian v. U.S.*, the defendant argued the destruction of a FBI agent's notes constitutes destruction of evidence that may have been exculpatory, and the defendant was denied his right to due process. The court disagreed with the defendant, finding if the argument made by the Solicitor General was accurate, the agent's notes were made for the purpose of transferring data, and the destruction occurred in good faith and in accord with their normal practice. The destruction of evidence did not deprive defendant of any right. 368 U.S. 231, 242, 82 S.Ct. 302 (1961).

In *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528 (1984), the court looked at the obligation of the Government to preserve breath samples of suspected drunk drivers for the analysis of the breath test to be admissible in court. The court relied on a number of different factors in the determination that due process does not require that law enforcement agencies preserve breath samples. First, the court examined the purpose of evidence. In doing so, the court referred to *Killian v. U.S.* in making a determination that breath samples, like agent notes, was raw data. The actual evidence to be presented was not the breath, but the results of the testing of the breath samples. The court concluded the defendant's purpose in requesting the evidence was for impeachment of the results. *Trombetta* at 487. The court also considered the intent and the reason of the Government when the breath samples were destroyed. The court concluded the breath samples were not destroyed in an effort to circumvent the disclosure requirements established by *Brady v. Maryland*. The breath samples were destroyed when the

officers were acting "in good faith and in accord with their normal practice." *Trombetta* at 488,

citing *Killian v. U.S.*, at 242.  Finally, the court determined the duty to preserve evidence must be

limited to evidence that might be expected to play a significant role in the suspect's defense.

*Trombetta* at 488.  "Evidence must both possess an exculpatory value that was apparent before

the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain

comparable evidence by other reasonably available means." *Trombetta* at 498, citing *United*

*States v. Agurs*, 427 U.S. 97, 109-110, 96 S.Ct. 2392 (1976).  The court agreed the breath

samples might have helped the defendant, however, the court relied on the accuracy of the breath

analysis and the general acceptance of the tests, and determined the chances were low the breath

samples would have been exculpatory.

The case at hand is very similar to *Trombetta.*  The evidence to be presented will be the

results of the DNA analysis, not the actual DNA.  The results of the test will be provided to the

defendant.  When examining the intent and the reason for the destruction of evidence, there is no

intent to avoid disclosure of evidence.  The reason for the destruction is also not to prevent the

defendant from obtaining the evidence.  The reason is to obtain a complete DNA sample for

analysis and comparison.  The Sedgwick County Regional Forensic Science Center established

their procedure is to use both swabs to ensure they will obtain the greatest possible sample for

comparison.  The Government and the agency is acting in good faith and within their normal

practice.  Finally, the evidence may play a significant role in the suspect's defense.  However,

the testing procedures used by the laboratory are accepted method of DNA analysis.  Further, the

defendant will have the ability to cross-examine the DNA analyst, will be able to call an expert

to impeach the analyst, the testing procedure, and the results.

4

IT IS ORDERED FOR THE REASONS SET FORTH ABOVE that the defendants's motion for a protective order (Doc. 22) be DENIED.

SO ORDERED this 13th day of August, 2007.


                s/ Wesley E. Brown
                Wesley E. Brown, Senior U.S. District Judge